Natividad BACA, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7076.

United States Court of Appeals
Tenth Circuit.

Nov. 13, 1962.

---

Jack M. Short, Oklahoma City, Okl., for appellant.

John Quinn, U. S. Atty. (L. D. Harris, Asst. U. S. Atty., on the brief), for appellee.

Before LEWIS, BREITENSTEIN, and SETH, Circuit Judges.

SETH, Circuit Judge.

Appellant was indicted on six counts, charging him with receiving and concealing heroin, for conspiracy to sell it, and for its sale. Named as a co-defend-ant was Danny Baca, a cousin of the appellant, who entered a plea of guilty. Appellant was convicted on May 16, 1962, on all counts. On May 18, 1962, when appellant appeared for sentencing, his brother, David Baca, made an unsworn statement to the court that it was he, and not appellant, who was with the co-defendant Danny Baca at the time the sales of heroin were made. The court then postponed any further hearing for several days and directed that an investigation be made. The appellant moved for an order of acquittal or in the alternative for a new trial on the ground of newly discovered evidence; a hearing was had, and the court heard testimony from the officers and government agents as to the identification of appellant. The court overruled the appellant's motion and sentenced him to five years on counts 1 and 2, eighteen years on counts 3 and 5, and eighteen years on counts 4 and 6, the sentences to run concurrently.

The questions on appeal are whether or not the trial court abused its discretion in denying the motion for a new trial, and whether error was committed in sentencing.

A consideration of the first question requires a brief description of the facts. The record shows that a narcotics agent was introduced by a third party to contacts in Albuquerque, New Mexico. On the following morning the agent and the third party drove to a designated house where appellant's co-defendant, Danny Baca, came to the car, talked with the agent, and said he would be able to obtain heroin if they would return in approximately a half hour. The agent returned, Danny Baca got in the car, asked them to wait for his cousin, who soon joined them and who was introduced as "Natris." Then the agent, the third party, Danny Baca and "Natris," who during the trial was identified as the appellant, drove around Albuquerque for over an hour making several stops, the parties getting in and out of the car from time to time. Then Danny Baca left the car and when he returned he handed the agent some packets containing heroin.

The agent then drove the car with all the occupants back to the house where he had picked them up. There Danny Baca told the agent he could get more "stuff" later that evening. The agent returned to the address in the evening where he picked up Danny Baca and "Natris." They again drove around Albuquerque for a while, the exact time not being stated, and the agent paid Danny some money, and after several stops, the group returned to the house where Danny Baca gave the agent some packets of heroin. On both of these drives around Albuquerque another narcotics agent followed and watched the first car and its occupants, and in so doing he was accompanied by county deputy sheriff O'Guin during the first tour and by deputy sheriff Armijo during the second.

The narcotics agents and deputy sheriff O'Guin testified that the person accompanying Danny Baca identified as "Natris" was the appellant. Deputy sheriff Armijo testified he could not positively identify appellant. The appellant testified he was not present during the several incidents.

The co-defendant, Danny Baca, testified that appellant was not present at the sales. When asked as to the identity of the individual who was present, he stated, "Well, I would rather not say considering I don't want to get anybody else in trouble," and later, when asked whether he knew the man that was involved, "I just know him by a nickname," and that this nickname was "Natris." When asked whether "Natris" was his cousin, he said he was not, and that he had known "Natris" a few months but did not know when he first met him.

At the hearing on appellant's motion for a new trial, David Baca again appeared with the appellant and the court again heard testimony from the narcotics agent to whom the heroin was sold, from the agent who was observing, and from deputy sheriff O'Guin. These government witnesses again identified appellant, and deputy sheriff O'Guin testified he knew Natividad Baca on sight. David Baca was not put on the stand at any time although the United States Attorney suggested that this should be done. The appointed counsel for appellant did not call him for the reason that he thought this would prejudice David Baca's rights. Thus the court had before it no more than the unsworn statement of David Baca that it was he, rather than appellant, who was present at the time the sales were made by Danny Baca. The trial court felt that the identification of appellant as the person present was established, and the motion was overruled and appellant was sentenced.

According to the unsworn statement made by David Baca, he was the person who rode in the car on several occasions with appellant's co-defendant, and he would thereby be the one introduced to the agent by co-defendant Danny Baca as "Natris," a cousin of co-defendant, and the person whom Danny Baca testified he knew only by a nickname and had known for a relatively short time. Also the record shows that this David Baca is the cousin of the co-defendant, Danny Baca, lives across the street from him, and is the brother of the appellant. From all the facts it is apparent that the defendants knew at all times the person who accompanied appellant's co-defendant when the sales were made. This being the case, we do not believe that the "evidence" urged is "newly discovered." Johnson v. United States, 32 F.2d 127 (8th Cir.). Further the statement relied upon was unsworn, was volunteered after the trial by appellant's brother, and was apparently regarded by the trial court as not worthy of consideration. Evans v. United States, 122 F.2d 461 (10th Cir.).

Rule 33 of the Rules of Criminal Procedure provides that the court may grant a new trial "if required in the interest of justice." This circuit in several cases has considered the standards used in granting new trials for newly discovered evidence. In Long v. United States, 139 F.2d 652 (10th Cir.), and in Apodaca v. United States, 188 F.2d 932 (10th Cir.), this court stated that it was within the sound judicial discretion of the trial court as to whether or not a new

trial would be granted under these circumstances, and that an order denying such a motion would not be disturbed unless it could be shown there was a plain abuse of discretion. In Evans v. United States, supra, the "new evidence" was an affidavit given by appellant's fellow prisoner approximately two years after the crime. The court felt that this was of doubtful credibility and was not of such character as would probably produce an acquittal on a new trial. In the case at bar when the statement of David Baca was first made to the effect that he was the person present and not the appellant, the trial court requested that an investigation be made during the several days' recess and at the hearings gave ample opportunity for David Baca to be put on the stand, or the point to be otherwise developed. The investigation apparently turned up no new circumstances as the appellant came forward with nothing new nor was David Baca's original statement amplified. The court requested further testimony on the identification of the appellant; this was given by witnesses who had ample opportunity to observe appellant, it was clear, and the court was satisfied with it. We certainly cannot say that there was a "case of clear abuse" of discretion by the trial court. The action taken by the trial judge was clearly within his sound discretion.

The second point urged by appellant for reversal relates to the manner in which sentence was imposed by the court. The appellant urges that the court did not follow the provisions of 26 U.S.C. § 7237(c) (2). This provision relates to sentencing for a second offense.

We do not see how, even if it be held that the judge did not follow this procedure, it was prejudicial to the appellant. The purpose of the statute cited is to give the person convicted and about to be sentenced as a second offender an opportunity to show that he is not the person previously convicted. There was no occasion here to give appellant such opportunity since he was handled as a first offender. If this is such a case, we know of no authority which makes it prejudicial error for a trial judge to sentence a second offender as a first offender. The sentence received by the appellant does not exceed the maximum for either a first or second offense, and the sentence on the two additional counts did not exceed the minimum sentence for a second offender. Therefore, appellant has shown no prejudice in the manner in which he was sentenced nor the sentence he received.

Affirmed.