Everett ROBINSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7749.

United States Court of Appeals Tenth Circuit.

May 26, 1965.

Jack E. Dalton, Jetmore, Kan. (Harley & Grist, Wichita, Kan., Tom Harkness, Ness City, Kan., and Van Smith, Jetmore, Kan., on the brief), for appellant.

Melvin M. Gradert, Asst. U. S. Atty., Wichita, Kan. (Newell A. George, U. S. Atty., Wichita, Kan., on the brief), for appellee.

Before PICKETT and HILL, Circuit Judges, and CHRISTENSEN, District Judge.

PICKETT, Circuit Judge.

The defendant Robinson was convicted of making a false statement as to his financial condition in an application for a loan from a corporation organized under 12 U.S.C. §§ 1131–1134m, in violation of 18 U.S.C. § 1014. He appeals from a judgment and sentence entered thereon.

On January 12, 1961 Robinson submitted a written application for a loan to the Larned Production Credit Association, a corporation organized in Kansas under the provisions of 12 U.S.C. §§ 1131–1134m. The application was signed by Robinson and listed total liabilities in the sum of $30,000. The indictment alleged that the liabilities in fact exceeded $75,000. Robinson admitted that his liabilities at the time the application was prepared far exceeded the sum of $30,-000.[1] His explanation for his failure to disclose additional liabilities was that the

---

1. After testifying that he furnished to Mr. Hammond, the Manager of the Corporation, the data to be inserted in the application form which included as his total liabilities only a $30,000 item due the Trego Wakeeney Bank, Robinson stated:

"Q. Mr. Robinson, I am going to hand you what has been marked as Government's Exhibit 13, which is a note dated August 22, 1960, to Woods & Defke in the amount of $50,000.00. And ask you—ask you if you told him about that note? A. No, sir, I didn't.

"Q. That is an unsecured note? A. Yes, sir.

"Q. I hand you what has been marked as Government's Exhibit 12, which is a note dated August 22, 1960, to Woods & Defke in the sum of $13,-120.00. Did you tell him about that note? A. Yes, sir—no, sir, I didn't. Didn't tell him about it.

"Q. All right, sir. Now, two days prior to the date that this application was made you received a loan from American State Bank at Great Bend, Kansas, did you not? A. I thought I received it from Mr. Thies.

"Q. From whom did you get the $25,000.00? A. Mr. Thies.

"Q. That is at the American State Bank? A. Yes, sir.

"Q. And you signed a note for twenty-five thousand; didn't you? A. I—the way he told me, he had some money on time deposit, and he said, 'I'm going to loan you my personal money.' I didn't know I owed the Bank.

"Q. But, Mr. Robinson, you signed an unsecured note for $25,000.00 two days before you signed this application; didn't you? A. Well, yes, I signed the note. But I thought it was Mr. Thies's money, the way he told me.

"Q. Would it have made any difference to whom it was? A. Well, it made a difference whether I owed the Bank or a personal note.

"Q. Did you tell Mr. Hammond that you had signed a note for $25,000.00 two days before that was unsecured to The American State Bank, or to Mr.— A. No.

"Q. —or to American State Bank or Mr. Thies or anyone else? A. No, I didn't.

"Q. Was that the check which is marked as Exhibit 14 which you received from the American State Bank? A. Well, I guess that's a copy of it. I don't think that's the check. Draft on the Commerce Trust. * * *

"Q. (By Mr. Green) Mr. Robinson, I hand you what has been marked as Government's Exhibit 11, which is a check in the amount of $40,000.00 dated September 15, 1959, to Woods and Defke, and ask you if you advised Mr. Hammond about that? A. No, I didn't.

"Q. Now, ten days prior to the time you signed this application, you signed a note to Viola Sclagel for $5500.00

Manager only asked him how much he owed the Bank where he was doing business. It is shown by the testimony of the Manager that Robinson came to the corporation office and told him that he desired to make application for a loan. Robinson was advised that it would be necessary for him to complete a financial statement and a loan application. The application form supplied by the corporation contained numerous questions, including those with reference to the financial condition of the applicant. The questions were submitted to Robinson orally and his answers were inserted on the form by the manager. Upon completion of the application it was signed by Robinson. The amount for which the loan was to be made was not included in the application because it had not yet been determined. The application for the loan was approved on January 17, 1961 for $30,000, which amount was then inserted in the application. Referring to the information furnished by Robinson in preparation of the financial statement in the application, the manager stated that "The amount of his liabilities and his assets are exactly as he stated them." The evidence is uncontradicted that Robinson's statement of his liabilities in the application and financial statement are false.

■ It is urged that the trial court should have directed a verdict of acquittal for Robinson for the reason that the record shows that the loan was actually approved prior to the execution of the application and that the corporation did not rely upon information in the application for approval of the loan. Apparently Robinson had discussed the matter with different corporation board members and he was advised at different times that his application should receive favorable consideration, but the loan was not approved for payment until the loan committee met January 17, 1961. Immediately after the approval for final disposition of the application, Robinson was notified that a loan for $30,000 had been approved and the money would be available upon execution of a note for $31,580.00.[2] The motion for acquittal was not well taken.

■ Prior to the trial a motion for a bill of particulars was submitted to the court. During the hearing on this motion the court stated that the defendant was entitled to have access to the signed application and any other statement in the possession of the United States which the defendant had signed. The District Attorney stated that he would be "glad to furnish" a copy of any instruments bearing the defendant's signature. No formal order was entered and no time was fixed for compliance as contemplated by Rule 16, F.R.Cr.P.[3] Defendant made no request for copies or permission to examine any documents which he had signed until time for trial, some five months later. The District Attorney explained that he construed the order to be that copies of signed instruments were to be furnished upon request. The order was informal and this interpretation was justified. Furthermore, there is no showing that defendant was prejudiced in any manner by his failure to have copies of the exhibits signed by him or that he did not know the contents of them. The admission in evidence of the signed application was not error.

---

dated January 2nd, 1961. I ask you if you advised Mr. Hammond about that note? A. No, sir.

"Q. Ten days prior you signed a note for $11,000.00 to Ben Sclagel. Did you advise Mr. Hammond about that note? A. No, I didn't.

"Q. On September 6th, 1960, you received $25,000.00 from John—what is John's name? A. Eaton.

"Q. Did you tell Mr. Hammond about that indebtedness? A. No. * * *"

2. The $31,580.00 included $1,580.00 for the purchase of 380 shares of Class B stock of the corporation.

3. Rule 16, F.R.Cr.P., provides: " * * * The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

█ The court instructed the jury that the defendant Robinson had testified that he signed the application for a loan on January 12, 1961, and "therefore the jury are entitled to draw from that fact the inference that he had knowledge of the information it contained at the time he signed it." It is contended that the evidence shows that the application was made and completed by the corporation and was signed by the defendant without being read. It is argued that under these circumstances it was improper to instruct the jury that it was entitled to infer that the defendant knew its contents. The evidence is uncontradicted that Robinson furnished the material information contained in the application and he signed it immediately after the information was furnished. The giving of the instruction was not erroneous.

█ During the course of the jury's deliberations, it sent a communication to the court that it was deadlocked and it was believed that a verdict could not be reached at any time. Upon receipt of this notice the court further instructed the jury and gave the typical instruction, sometimes known as the "Allen" instruction. This charge requires the jury to give further consideration to the case and advises it that in conferring together as jurors, each should consider the view of others with a disposition to re-examine his own views. The jury was told that if a greater number are for conviction, each dissenting juror is to consider whether a doubt in his own mind is a reasonable one, and the same consideration should be given by the minority if the majority is for acquittal. This type of instruction has been approved in this circuit. DeVault v. United States, 10 Cir., 338 F.2d 179; Carter v. United States, 10 Cir., 333 F.2d 354; Mills v. Tinsley, 10 Cir., 314 F.2d 311, cert. denied 374 U.S. 847, 83 S.Ct. 1907, 10 L.Ed.2d 1067; Apodaca v. United States, 10 Cir., 188 F.2d 932. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528.

█ A timely motion for a new trial was filed on the grounds of newly discovered evidence. Attached to the motion was an affidavit of a former employee of the corporation, the gist of which was that the loan was approved and the drafts drawn prior to the time that the application was completed. A motion for a new trial upon the ground of newly discovered evidence is not regarded with favor, and will be granted only with great caution. Long v. United States, 10 Cir., 139 F.2d 652. It is well settled that a new trial will not be granted where the newly discovered evidence is merely cumulative or of an impeaching nature. It must be material to the issues involved and to be of such a nature that upon a new trial a different result would likely be reached. Wion v. United States, 10 Cir., 337 F.2d 230, and cases cited; Long v. United States, supra. There is evidence in the record similar to the statements in the affidavit which tended to show that the loan may have been approved before the date of the application. Undoubtedly there had been some discussions concerning a loan with Robinson prior to the time of the application, and it is not unlikely that he may have been told that the loan would be approved, but there is no evidence that a loan for any amount was agreed upon, and it is undisputed that the amount of the loan which was finally authorized was determined from information in the application and the figures supplied thereafter. It is well settled that a motion for a new trial is addressed to the sound discretion of the trial judge and the action will be disturbed on appeal only on a showing of abuse of that discretion. Baca v. United States, 10 Cir., 312 F.2d 510, cert. denied 373 U.S. 952, 83 S.Ct. 1682, 10 L.Ed.2d 706; Wion v. United States, supra; Apodaca v. United States, supra; Long v. United States, supra. We find no abuse of discretion in denying the motion.

Other errors presented in Robinson's brief have been considered and found to be without merit.

Affirmed.