**Billy Joe JONES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9699.**

United States Court of Appeals Tenth Circuit.

April 29, 1968.

Charles V. Foor, McAlester, Okl., for appellant.

Bruce Green, U. S. Atty., Muskogee, Okl., for appellee.

Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

Appellant was convicted of assaulting and otherwise interfering with an officer of the F.B.I. in violation of 18 U.S.C. §§ 111 and 1114, and of harboring and otherwise assisting a deserter from the Armed Forces of the United States in violation of 18 U.S.C. § 1381. A motion for a new trial based on the ground of newly discovered evidence was denied and this appeal resulted. We affirm.

Michael Jones is the son of appellant. Michael had been reported to the F.B.I. by the United States Air Force as a deserter. F.B.I. agent Lowry testified he first contacted appellant concerning Michael on October 18, 1966, and that appellant would not furnish information nor would he cooperate to secure the return of Michael. Agent Lowry also testified he advised appellant that it was a violation of the law to aid his son in any way so long as the boy was in a deserter status. Subsequent visits were made to the Jones home by Agent Lowry but no one was home, however, on November 4, 1966, Mrs. Jones was interviewed.

Appellant and Mrs. Jones both testified that on these occasions they indicated to Agent Lowry an attempt was made to have Michael return to the Air Force and that they would continue to cooperate in accomplishing his return.

Michael had not returned to the Air Force when Agent Lowry, Agent Bonner and Deputy Sheriff Kirkpatrick went to the Jones home on December 28, 1966. Finding no one at home on their morning visit, the officers contacted appellant at the home of Michael's grandparents. Appellant informed the officers Michael was home for Christmas but left the next day. During the afternoon of December 28 the officers returned to appellant's home. Agent Bonner was let out of the car and he circled behind the house. Lowry and Kirkpatrick continued driving up the road until they reached a wire gate some 75–100 yards from the house. Kirkpatrick testified that when he got out of the car to open the gate he heard Agent Bonner holler, "Stop, you are under arrest, this is the F.B.I." Then two shots from a small caliber weapon were heard and a third shot from a larger weapon was heard. Agent Lowry testified that he heard the same shots and basically the same declaration from Agent Bonner. Agent Bonner testified that after he positioned himself behind the house he saw Michael Jones come out the back door and run toward a ravine. Bonner ordered the boy to stop and the boy did stop. Bonner then heard two shots and looked toward the house where he saw appellant standing in the back doorway with a rifle. Bonner identified himself as being with the F.B.I. and ordered appellant to put his hands up and come out of the house. Appellant swung the rifle in Bonner's direction and fired two shots. Bonner drew his revolver, jumped behind a clump of dirt, and fired one shot toward the house. About this time Agent Lowry drove the car between Bonner and the house. Appellant came out of the house and he and Michael were arrested.

During the evening of December 28, the officers returned to the Jones house and found a 22-caliber rifle under the divan. There were eleven bullets in the

magazine and one in the chamber. The rifle was capable of holding fifteen bullets in the magazine and one in the chamber. Four empty cartridges were found outside the back door.

Mrs. Jones testified that after she and her husband returned from their visit to the grandparents, Michael stepped outside the back door and shut the door behind him. Mrs. Jones heard someone say, "Don't run, kid, or I'll shoot you", she then ran into the bedroom and screamed to appellant, "someone [is] going to shoot Michael." Appellant testified that he picked up his rifle and ran to the back door, fired two shots in the air, and after a shot was fired into the house, put up his weapon and was arrested. Appellant contends he fired only two shots.

Appellant was tried and convicted prior to the court-martial of Michael Jones. Although appellant was convicted of harboring a deserter, Michael Jones was not convicted of desertion, but was convicted of being absent without leave. Such a result can occur. Mancuso v. United States, 162 F.2d 772 (6th Cir. 1947); Michael v. United States, 393 F.2d 22 (10th Cir. 1968).

Appellant's motion for a new trial on the ground of newly discovered evidence, Fed.R.Crim.P. 33, is based on three points which came to light in a letter from counsel for Michael Jones to appellant's counsel. The correspondence stated that certain letters written by Mrs. Jones to the Air Force, in which the latter was informed Michael was at home, were important evidence in Michael's case. The correspondence also related that due to the timing of the two cases, and to prevent self-incrimination, Michael's counsel "refused to allow anyone to discuss any evidence or other matters surrounding the case with Airman Jones." Finally, the correspondence indicated that nine shells had been found in the backyard by Mrs. Jones shortly after the incident and that the shells were returned to her by Michael's counsel. The above three items of information formed the basis of appellant's motion for a new trial.

"A motion for a new trial upon the ground of newly discovered evidence is not regarded with favor, and will be granted only with great caution. Long v. United States, 10 Cir., 139 F.2d 652. It is well settled that a new trial will not be granted where the newly discovered evidence is merely cumulative or of an impeaching nature. It must be material to the issues involved and to be of such a nature that upon a new trial a different result would likely be reached. Wion v. United States, 10 Cir., 337 F.2d 230, and cases cited; Long v. United States, supra. * * * It is well settled that a motion for a new trial is addressed to the sound discretion of the trial judge and the action will be disturbed on appeal only on a showing of abuse of that discretion. Baca v. United States, 10 Cir., 312 F.2d 510, cert. denied 373 U.S. 952, 83 S.Ct. 1682, 10 L.Ed.2d 706; Wion v. United States, supra; Apodaca v. United States, supra (10 Cir., 188 F.2d 932); Long v. United States, 10 Cir., 139 F.2d 652, supra." Robinson v. United States, 345 F.2d 1007, 1011 (10th Cir. 1965).

In the court-martial proceedings, Michael's testimony concerning the shooting incident was substantially the same as that given by his mother and father in appellant's trial; it was merely cumulative in nature. Robinson v. United States, supra; Wion v. United States, 337 F.2d 230 (10th Cir. 1964). Michael's testimony did contain statements of intention relevant to that essential element of the crime of desertion, however, appellant has not raised an issue regarding the intent factor and does not assert that appellant could not be found guilty of harboring a deserter because Michael was not in fact a deserter.

None of Michael's testimony has the requisite status necessary to sustain a motion for new trial based upon newly discovered evidence. Appellant charges he was denied a fair trial because the de-

fense counsel would not allow Michael to talk with anyone. The record discloses that the only attempts to obtain Michael's testimony were telephone requests of counsel. There was no attempt to subpoena Michael.

The letter [1] Mrs. Jones sent to the Air Force recites that she asked Michael to come home because the family was having financial difficulties. The letter indicated that Michael was at home and that he was worried what the Air Force would do to him for running off. Therefore, it is difficult to see the relevancy of this information. The letter was not written by appellant. In any event, Mrs. Jones testified regarding the contents of the letter, thereby negating the need for the letter.

There was disagreement as to the number of shots that were actually fired. Agent Bonner testified that four shots had been fired by appellant and one by him. Lowry and Kirkpatrick heard two shots from appellant and one from Bonner. Appellant contends he fired two shots and Bonner fired a third. Four cartridges were introduced into evidence. Appellant testified he fired the rifle several times in the morning. In the context of these facts the appellant contends the nine additional cartridges found by Mrs. Jones were important. Since both appellant and Mrs. Jones testified concerning the number of shots fired and also that appellant fired the rifle numerous times prior to the incident in question, the additional cartridges would undoubtedly add credence to their testimony, however, there is not a sufficient showing that this evidence was unavailable at the time of trial. "[A] new trial is not warranted by evidence which, with reasonable diligence, could have been discovered and produced at trial. [Citations omitted]." Wheeler v. United States, 382 F.2d 998, 1002 (10th Cir. 1967). Appellant testified that he thought Mrs. Jones picked up some empty cartridges but this was not pursued by appellant's counsel through either of them.

We have considered the alleged newly discovered evidence as separate items, and as a whole, and we conclude that it is not likely a different result in the trial would be reached if this evidence had been introduced. Mares v. United States, 383 F.2d 811, 813 (10th Cir. 1967); Wion v. United States, supra. We also conclude that the trial judge did not abuse his discretion in denying appellant's motion based on that evidence. Mares v. United States, supra; Collins v. United States, 383 F.2d 296, 302 (10th Cir. 1967); Wheeler v. United States, supra; Robinson v. United States, supra.

Affirmed.

---

1. Although appellant indicates there was more than one letter wrtiten by Mrs. Jones, the record contains only one.