THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD CORDER, Defendant-Appellant.

Third District   No. 81-252

Opinion filed January 26, 1982.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Defendant Richard Corder was convicted of unlawful delivery of a substance represented to be a controlled substance and sentenced to a five-year term of imprisonment. After filing a notice of appeal, defendant moved to dismiss his appeal and filed a *pro se* petition for post-conviction relief. Counsel was appointed, and after an evidentiary hearing on an amended petition, the circuit court of Peoria County denied post-conviction relief.

On January 4, 1979, defendant was indicted for the subject crime, and a public defender was appointed to represent him. That appointment was withdrawn on February 13, 1979, when a privately retained attorney appeared for defendant. Trial was set for March 5, 1979, but the attorney requested and received a continuance for the purpose of further investigation. On March 19, 1979, counsel again requested a continuance pending the disposition of another proceeding. This the court denied and the cause proceeded to trial.

The State's evidence implicating defendant in the crime consisted of the testimony of Officer James Williams, an occurrence witness. Officer Williams testified that on June 21, 1978, he was working in an undercover capacity in the area of the El Dorado Club. At approximately 1 a.m., the witness met a black male who was introduced to him as Richard Corder. The officer had never met or seen this person before, but at trial identified defendant as that individual and further testified that defendant sold him a substance represented to be heroin. Officer Williams indicated that the transaction occurred while he was in the front seat, and defendant was in the rear seat, of a station wagon. The vehicle was parked approximately 75 feet from the nearest street light, and the interior lights were off, but the officer could clearly see that the criminal was clean shaven.

Defendant's evidence was designed to demonstrate that he was not the person who delivered the substance to Officer Williams. The crux of his defense was that, for the last six or seven years, he had continually worn a beard. William Bauer testified to this fact, but had not seen defendant between March 1978 and August 1978. Defendant also testified to the fact, but for the relevant period of time, his testimony was completely uncorroborated. At defendant's post-trial hearing, however, his attorney attempted to introduce corroborating evidence. Defendant's driver's license, issued six days after the crime, clearly bore the photograph of a bearded man, but had not been introduced into evidence during the trial. As defense counsel did not allege that the license was not available or unknown at the time of trial, this evidence was not considered by the court.

■■ In his amended petition for post-conviction relief, defendant alleged that his trial counsel was incompetent, ineffective, and frequently intoxicated. While a number of specific inadequacies were noted, the gravamen of the petition was the failure to corroborate defendant's testimony regarding his beard. It was defendant's burden to prove this allegation, and the determination of the trial court must be upheld unless manifestly erroneous. *People v. Bracey* (1972), 51 Ill. 2d 514, 282 N.E.2d 685.

At his evidentiary hearing, defendant produced both witnesses and affidavits from potential witnesses who indicated that they could corroborate his testimony concerning his beard. Bruno Scordo, the owner of the night club outside of which the drug transaction took place, testified that he had never seen defendant clean shaven, and that defendant had a beard of 1 to 1½ inches on June 21, 1978. Cathy Taylor testified that she saw defendant almost every day in June 1978, and he always wore a beard approximately 1 inch long. Frankie Jacobs, defendant's sister, testified that defendant had always worn a beard and had one on June 21, 1978. These witnesses, Robert Drucker and Ernest Washington, all alleged that they were able to testify at trial that defendant had a beard on June 21, 1978, or thereabouts, but they were not contacted by defendant's attorney.

Defendant testified that he gave his lawyer a list of witnesses, with addresses, three weeks before trial. The witnesses included, among others, Dick Brewer, Bill Bush, Robert Drucker, Frankie Jacobs, Bruno Scordo, and Ernest Washington. Four weeks before trial, defendant had informed his attorney about his driver's license. Trial counsel testified that defendant informed him of several witnesses a week or two before trial, but he could not recall their names or number. He indicated that defendant provided their telephone numbers, and that he personally attempted to telephone some of the witnesses, but was unsuccessful in reaching them. The attorney stated that he "got the word out" to his

contacts in the black community, had his secretary place some calls, and had Prince Chandler, who at the time ran an establishment called the Psychedelic, attempt to contact the witnesses. Counsel did not know whether Chandler ever contacted anyone.

This was the extent of defense counsel's effort to contact witnesses. He explained that he felt the witnesses were being uncooperative and found his attempts to contact them a "very frustrating experience." When asked if he therefore was forced to subpoena the witnesses, he replied that he did not know as he had disposed of defendant's file sometime after the trial. The reality of the matter is that he did not subpoena any witnesses nor seek a *subpoena duces tecum* for the driver's license.

While not a factor in our decision today, extensive evidence was presented concerning the existence of a serious drinking problem on the part of the attorney. The problem was expressly acknowledged by the trial court.

■■■ A defendant is entitled to the assistance of counsel under both the United States Constitution and the Illinois Constitution of 1970. Counsel can, however, be so incompetent as to undermine that right and deprive a defendant of his due process right to a fair trial. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) While the courts of this State have traditionally employed a two-tiered standard to determine the competence of counsel, holding an appointed attorney to a more rigorous standard than a privately retained attorney (compare *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203, with *People v. Murphy*), such a distinction has been questioned by the Supreme Court:

> "A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. * * * [W]e see no reason for drawing a distinction * * *" (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 344-45, 64 L. Ed. 2d 333, 344, 100 S. Ct. 1708, 1716.)

The State accurately indicates that *Cuyler* does not state that the standard for retained counsel must rise to that for appointed counsel, but we find this the better view and supported by precedent. (See *People v. Talley* (1981), 97 Ill. App. 3d 439, 443, 422 N.E.2d 1084, 1088; *People v. Scott* (1981), 94 Ill. App. 3d 159, 163-64, 418 N.E.2d 805, 808.) Therefore the inadequacy of a defendant's trial counsel entitled him to a new trial if counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different. *People v. Greer.*

In the case at bar, defendant was convicted on the strength of the identification testimony of one undercover officer, who did not effect an

arrest at the time of the crime. The officer unequivocally stated that the criminal was clean shaven. Although aware of this from pretrial discovery, defense counsel introduced no evidence at trial to corroborate defendant's testimony that he wore a beard before, during, and after the time of the crime. This was the case in spite of the fact counsel was aware of defendant's driver's license showing the presence of a beard six days after the commission of the offense, and that he had received a list of potential witnesses. None of the witnesses were interviewed. Neither the license nor a single witness was subpoenaed. When the attorney requested another continuance at the time of trial, he did not state that there was any problem securing or producing any needed evidence.

■■ The failure to interview witnesses may indicate actual incompetence, particularly when the witnesses are known to trial counsel and their testimony may be exonerating. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) This case presents a situation where not only this mode of incompetence was evidenced, but witnesses and evidence came after trial, when defense counsel attempted to introduce the license at the post-trial hearing. Yet even this attempt was thwarted by the attorney's failure to allege that the evidence was not available or known to him at the time of trial. Under the circumstances presented in this case, we find trial counsel was actually incompetent, and this incompetence produced substantial prejudice to defendant without which the outcome of his trial would probably have been different.

Accordingly, the order of the circuit court of Peoria County denying the petition for post-conviction relief is reversed and this cause remanded for a new trial.

Reversed and remanded.

SCOTT, P. J., and BARRY, J., concur.