725 P.2d 1096

**STATE of Arizona, Appellee,**

v.

**Reynaldo TAPIA, Appellant.**

No. 6402.

Supreme Court of Arizona,
En Banc.

Sept. 5, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., Phoenix, Diane Hienton, Asst. Atty. Gen., for appellee.

O'Dowd, Burke & Lundquist by Bruce Burke, Tucson, for appellant.

OPINION

HOLOHAN, Chief Justice.

Defendant Reynaldo Tapia was convicted of the first degree murder of Lillys M.

Wilson and of burglary and armed robbery of her Tucson residence. He received 10.5 years for the burglary, 10.5 years for the armed robbery, and life imprisonment without the possibility of parole for 25 years for the murder. The sentences for burglary and armed robbery were to run concurrently with the life sentence. We have jurisdiction pursuant to art. 6 § 5(3) of the Arizona Constitution and A.R.S. § 13–4031.

The pertinent facts follow. On a day early in June, 1983 defendant and a companion, "Spike" Martinez, did some yardwork for a Mrs. Williamson, the next door neighbor and landlady of the victim. Several days later, when Mrs. Williamson returned from a hairdresser's appointment, she found her home had been burglarized. Sometime during the night of June 18 to 19, intruders entered Mrs. Wilson's home, took various possessions, and attacked and beat her with a pair of pruning shears. She was comatose when admitted to University Hospital and she died approximately two weeks later. In October of 1983, while under arrest on other charges which were later dropped, defendant admitted under interrogation to having entered the victim's home on the night she was attacked. He did not admit to the murder. He later recanted his confession to the burglary. At trial, defendant's attorney relied mostly on the argument that defendant's confession was coerced by the Tucson police.

The sole issue presented on appeal is whether defendant was denied effective assistance of counsel.

In *State v. Lee,* 142 Ariz. 210, 689 P.2d 153 (1984), we stated the two part test for finding ineffective assistance of counsel. In *Lee,* we held:

that a criminal defendant is entitled to have his or her conviction reversed if he or she shows, first, that under the circumstances and in light of prevailing professional norms counsel showed less than minimal competence in representing the criminal defendant and, second, that "there is a *reasonable probability* that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."

*Id.* at 214, 689 P.2d at 157, *citing Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984) (emphasis added). *See also State v. Nash,* 143 Ariz. 392, 694 P.2d 222 (1985), *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (explicitly adopting both prongs of *Strickland* ). We defined "reasonable probability" as "less than 'more likely than not' but more than a mere possibility." *State v. Lee,* 142 Ariz. at 214, 689 P.2d at 157. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington, supra,* 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93.

During the trial defendant was represented by Robert Louis Murray of Tucson. Murray was subsequently disbarred from the practice of law in Arizona. *Matter of Murray,* 147 Ariz. 173, 709 P.2d 530 (1985). In that opinion we found that:

[Robert Louis Murray] represented Reynaldo Tapia as a defense attorney in a criminal prosecution. In the course of this representation, respondent failed to interview witnesses who may have been helpful to Tapia's defense. Therefore, respondent failed to represent his client in a competent manner ... [and as a result] violated DR 6–101 and DR 7–101, Code of Professional Responsibility.

*Id.* at 175, 709 P.2d at 532. Because we found counsel acted incompetently in his representation of defendant, the first prong of the two part test for ineffective assistance of counsel has been met. To meet the second prong, defendant must show that his counsel's errors prejudiced him.

Prejudice is shown by evidence that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Lee, supra,* 142 Ariz.

at 214, 689 P.2d at 157 (1984). The defendant argues that but for his counsel's errors and omissions the outcome of the trial would probably have been different.

To support defendant's ineffective assistance claim, he called Fred Dardis, Pima County Public Defender, as an expert witness to testify at the hearing on his motion for a new trial. Mr. Dardis recited a litany of trial counsel's omissions that, in his opinion, fell below the minimum expected of competent defense counsel. Those omissions included failure by trial counsel to:

1. Contact or interview Tapia's girlfriend either to find support for or to refute Tapia's alibi contention.[1] During the time Tapia was alleged to have committed several crimes, she was hospitalized giving birth to their child and it was alleged that Tapia was present during the birth and spent considerable time with her.

2. Contact or interview the girlfriend's father, who saw the defendant during the same time frame.

3. Attempt to sever from the first degree murder charge a count relating to the burglary of the Williamson residence on a different day.

4. Explore a potential intervening, superseding cause of death.

5. Object to any of the instructions given to the jury and did not offer any instructions on lesser-included offenses.

R.T. June 25, 1984 at 38–47. We agree with defendant's contention that the most important omission was trial counsel's failure to interview, at a minimum, the two people who could testify to defendant's whereabouts, his girlfriend and her father.

In post trial hearings the testimony which could have been given was presented through Priscilla Mendibles, the defendant's girlfriend, and her father, Manuel Mendibles. The testimony corroborates much of what the defendant testified to in the trial. The testimony shows that the defendant had taken Priscilla to the hospital where she bore his son. This is supported by hospital records showing that defendant was present at the admission. The defendant was happy with the birth of his son, and he stayed with Priscilla at the hospital for several hours. He left the hospital in the late afternoon. Priscilla next saw him at the hospital in the early morning hours of June 19th.

Manuel Mendibles testified at trial as a State's witness, but his full testimony was not developed by the defense. Mendibles' testimony would have corroborated much of what the defendant stated at trial. Mendibles was with the defendant at a party on June 18 from 8:00 p.m. to 10:00 p.m. The defendant was tired by 10:00 p.m., and Mendibles asked the defendant to go home to the Mendibles' house. When Mendibles arrived home in the early morning hours of June 19, he saw what he took to be the defendant in one of the beds.

The defense now contends that the additional evidence supports the defendant's position that he was happy about the birth of his son without any motive or desire to commit a brutal murder and that his activities during the crucial hours of the crime are accounted for by other witnesses.

When we consider that the defendant does not have to prove his innocence, but only raise a reasonable doubt about his guilt, the evidence which should have been produced becomes even more important. In addition, the nature of the State's case must be considered to determine the importance of the omitted defense evidence. There was absolutely no physical evidence linking the defendant to the murder. Although police found fingerprints on the pruning shears used to batter the victim, none matched defendant's prints. The strongest evidence was the defendant's admission, once given, that he was present at the victim's home on the night of the attack. Two key prosecution witnesses linking the defendant to the crimes admitted on the stand to having lied about the case

---

1. In fact, the girlfriend testified at the hearing on the motion for new trial that Mr. Murray never returned any of her repeated phone calls. R.T. June 25, 1984 at 15.

to the police. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland v. Washington, supra,* 466 U.S. at 696, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

Considering the shortcomings in the State's evidence, it is reasonably probable that a stronger defense by trial counsel could have resulted in an acquittal for the defendant. Even though defendant testified on his own behalf, no evidence was produced to corroborate his alibi; because defendant recanted his confession, his credibility was questionable. Failure to interview and call the witnesses needed to bolster defendant's alibi, without doubt, prejudiced his case.

After reviewing the circumstances surrounding the representation Tapia received, we conclude that it fell below the required standard and that there was a reasonable probability that defendant's trial would have had a different result if the defendant had been given a competent defense.

The judgment of conviction and sentence are reversed, and the case is remanded to the superior court for a new trial.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.