Steve Louis GIST, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 86–87.

Supreme Court of Wyoming.

May 19, 1987.

Leonard D. Munker, Public Defender, Julie D. Naylor, Appellate Counsel, Wyoming Public Defender Program; Gerald M. Gallivan, Director, and Loyd E. Smith, Student Intern, Wyoming Defender Aid Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Mary B. Guthrie, John W. Renneisen, Senior Asst. Attys. Gen., and Gregory A. Phillips, Legal Intern, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

In this appeal from the denial of successive motions for a new trial, Steve Louis Gist poses two issues. The first is whether the trial court erred in denying a motion for a new trial based upon newly discovered evidence, the testimony of Gist's brother, Roger, that he in fact had committed the offense of which Gist was convicted. After that motion was denied, a second motion for a new trial was presented based upon ineffective assistance of counsel. The gravamen of this contention was the manner in which the brother's potential testimony was dealt with at the time of Gist's trial. In the clear light of the standards relating to newly discovered evidence, the trial court did not err in denying the first motion for a new trial. We con-clude, however, that the trial court did err in denying the second motion for a new trial, and we reverse and remand with instructions that the court vacate Gist's conviction and grant him a new trial.

In the Brief of Appellant, the issues are said to be:

"I. Whether the trial court's denial of appellant's motion for a new trial based upon newly discovered evidence constituted an abuse of discretion?

"II. Whether appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment?"

The State of Wyoming in its Brief of Appellee says that the issues are:

"I. Whether the trial court abused its discretion by denying appellant's motion for a new trial based on newly discovered evidence.

"II. Whether the appellant received effective assistance of counsel as guaranteed by the Sixth Amendment."

Gist was charged by a grand jury indictment with delivering, or possessing with intent to deliver, marihuana in violation of §§ 35-7-1031(a) and 35-7-1014(d)(xiii), W.S. 1977.[1] At his arraignment, Gist requested court-appointed counsel, and the public defender's office was appointed to represent him. At the pre-trial conference, no witnesses in behalf of Gist were listed, but he did reserve the right to testify himself. He responded negatively to a request by the state for a notice of alibi.

Gist's brother, Roger Gist, was indicted by the same grand jury. He had been a fugitive, but two days before Gist's trial the brother was returned to Campbell County and lodged in the jail. The day immediately preceding the trial the brother appeared in court, entered pleas of not guilty to the several counts of the indictment against him and requested the assist-

---

**1.** Section 35-7-1031(a), W.S.1977, provides:

"(a) Except as authorized by this act [§§ 35-7-1001 to 35-7-1055], it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

\* \* \* \* \* \*

"(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;"

Section 35-7-1014(d), W.S.1977, includes marihuana in the controlled substances classified in Schedule I.

ance of counsel. The record is equivocal as to whether the public defender's office then was appointed, but certainly, there was every reason to believe that the public defender's office would be appointed. Among the counts to which the brother entered a plea of not guilty was one relating to the same transaction out of which the charges against Gist arose.

At his trial the following day, Gist presented no evidence. It was his theory that it was his brother, Roger Gist, and not he who delivered the marihuana to the undercover officer. The only testimony the jury heard was that of the undercover officer. He testified that Steve delivered the marihuana to him, but he also testified that the brother, Roger, was responsible for arranging the sale of the marihuana and contacted him to advise of the possible availability of the marihuana for sale. The officer further testified that Roger requested him to follow Roger to the house where the brothers lived. It was Roger who took him into the kitchen and showed him sample baggies of marihuana. At that time, Steve Gist was outside the residence and had to be summoned to produce the marihuana after the undercover officer had agreed to purchase it. This was necessary because Roger told him that Steve had hidden the marihuana, and Roger did not know where to find it. When summoned, Steve came into the kitchen, talked to Roger privately, went into a back bedroom and returned to inform the officer that one ounce of marihuana was available for sale. The deal was struck, and Steve told the officer to put the money on the kitchen window sill. Gist's attorney relied solely on cross-examination and argument in an attempt to demonstrate that the officer could have been mistaken as to the identity of the person who actually delivered the marihuana. The jury then returned a verdict of guilty upon which Steve Gist was sentenced.

After Steve Gist's trial, Roger Gist negotiated a plea bargain with the prosecuting attorney which resulted in the dismissal of the charge against him which arose out of the same transaction which was the basis for Steve Gist's conviction. Roger Gist

then confessed that it was he and not Steve who had delivered this particular marihuana to the undercover officer. Steve Gist then moved for a new trial on the basis of newly discovered evidence. He alleged that the new evidence consisted of "testimony, in the form of a confession, of the defendant's brother, Roger Gist, that he was the person, not the Defendant, that arranged the deal and actually delivered the marihuana * * *." The same motion for a new trial recited:

" * * * Roger Gist was arraigned before this Court on the 18th of September, 1985, one day before the trial in this matter, at which time he entered a plea of not guilty to several counts of a Grand Jury Indictment. One of the counts to which Roger Gist pled not guilty included one count of aiding and abetting the same delivery of marijuana with which the Defendant was charged and ultimately convicted.

" * * * Due to an apparent conflict of interest, Roger Gist could not be interviewed regarding the case by the Attorney for the Defendant, Steven Gist, on the evening of September 18, 1985, as no attorney had been appointed to represent Roger Gist by the Public Defender's Office."

At the hearing on this first motion for a new trial, Roger Gist testified that it was he and not Steve who was responsible for the delivery of the marihuana to the undercover agent. The agent testified at the same hearing and reiterated his earlier testimony that Steve and not Roger made the delivery. The court denied this motion for a new trial because Steve Gist or his attorney knew of the role of Roger Gist in the marihuana transaction, and the court concluded that under those circumstances the testimony could not be newly discovered. This ruling is the basis for Gist's first contention of error.

In *Opie v. State*, Wyo., 422 P.2d 84, 85 (1967), this court articulated the criteria for granting a new trial on the basis of newly discovered evidence in this way:

" * * * [I]t is incumbent on a party who asks for a new trial on the grounds of

newly discovered evidence to satisfy the court: (1) That the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different verdict, if the new trial were granted; and (4) that it is not cumulative, viz., speaking to facts in relation to which there was evidence at the trial." (Citations omitted.)

We held in *Grable v. State*, Wyo., 664 P.2d 531 (1983), that the decision as to whether to grant or deny a motion for new trial based upon newly discovered evidence is one within the discretion of the trial court, and its ruling will not be reversed unless an abuse of discretion is shown. The test for an abuse of discretion is whether the trial court could reasonably conclude as it did. *Grable v. State*, supra, *Martinez v. State*, Wyo., 611 P.2d 831 (1980), clarified by *Duffy v. State*, Wyo., 730 P.2d 754 (1986).

█ In this instance, the *Opie* test was applied by the trial court which concluded: " * * * The defendant has failed to show that there is any newly discovered evidence, that could not have been discovered, through due diligence, prior to trial of this matter."

The record indicates that it was reasonable for the district court to form this conclusion. The evidence claimed to be newly discovered was Roger's testimony. The defense of the case on behalf of Steve makes it clear that Steve's counsel was advised of the proposition that Roger not Steve was responsible for the delivery. Counsel also knew that Roger was in jail in Gillette. Counsel, for reasons which will be discussed later, concluded not to attempt to produce Roger as a witness, but under these circumstances the fact that Roger's specific testimony was not disclosed until after the trial does not make this newly discovered evidence. *Frias v. State*, Wyo., 722 P.2d 135 (1986); *Salaz v. State*, Wyo., 561 P.2d 238 (1977); *United States v. Maestas*, 523 F.2d 316 (10th Cir.1975); *Baca v. United States*, 312 F.2d 510 (10th Cir.1962), *cert. denied*, 373 U.S. 952, 83

S.Ct. 1682, 10 L.Ed.2d 706 (1963); and cases cited in 24 C.J.S. *Criminal Law* § 1454 at 178–181 (1961).

Since the information about Roger's potential testimony did not come to the knowledge of Steve or his attorney until after the trial, but at least the potential was known before the trial, the first ground of the test articulated in *Opie v. State*, supra, was not satisfied. All of the factors must be present in order to justify the granting of a motion for new trial based on newly discovered evidence pursuant to Rule 34, W.R.Cr.P. "If one of those grounds is not satisfied then there has not been an error of law committed by the court under the circumstances, and no abuse of discretion could be found." *Grable v. State*, supra, 664 P.2d at 535. Under the circumstances of this case, it is obvious that the trial court did not abuse its discretion in finding that there was no showing of newly discovered evidence which could not have been discovered with due diligence. We affirm that decision of the trial court.

█ In addressing this motion, Gist urges the adoption of a less stringent test than that articulated in *Opie v. State*, supra. He cites several federal circuit court decisions which have held that, when a motion for a new trial based on newly discovered evidence is filed within ten days of the conviction, the motion should be tested under a standard of the interest of justice. These cases applied to Rule 33, F.R.Cr.P., and because of its similarity to Rule 34, W.R.Cr.P., such federal decisions are persuasive. *Grable v. State*, supra. Gist urges that since other motions filed within ten days pursuant to Rule 34, W.R.Cr.P., are tested by the interest of justice standard, such a motion made within ten days based on newly discovered evidence should invoke the same standard. This evidence was not newly discovered, however, and for that reason, a new trial would not be justified under either the standard articulated in Opie or the interest of justice standard. *United States v. Rodriguez*, 738 F.2d 13 (1st Cir.1984). The interest of justice standard, if applied, would not change

the result in this case, and we do not decide whether we would accede to the federal authority in a proper case.

The issue presented by Gist's second motion for a new trial demands a more detailed analysis. Because the record is equivocal, we cannot discern with certainty whether the public defender's office had been appointed to represent Roger Gist prior to Steve Gist's trial. If the public defender's office was appointed to represent Roger Gist prior to Steve Gist's trial, an actual conflict of interest was present. If the public defender's office was not appointed at that time, however, then we must consider whether the case was handled by Steve Gist's appointed counsel in accordance with applicable standards.

The motion for a new trial on the basis of newly discovered evidence alleged:

"* * * No attorney had been appointed to represent Roger Gist by the public defender's Office."

Gist's counsel stated at the hearing on that motion:

"* * * I sat in with the defendant [Roger Gist] during the arraignment after I'd been called by the Court, and, so, my only knowledge of Roger Gist was the fact that he had been arraigned and that he had entered a not guilty plea to both of those counts.

"Because I knew that a conflict of interest had arisen in the case because I did represent his brother, I knew that I could not discuss the matter—or should not discuss the matter—with Roger Gist, and, so, my only knowledge was his not guilty plea to that count prior to the Steven Gist trial. And—and, therefore, I also assumed that he would exercise his Fifth Amendment right if he were subpoenaed to testify.

"And I also assumed further that this Court would probably not let him testify before or confess before consulting with an attorney. The Public Defender's Office was appointed to represent him; however, because of the conflict our—the three of us here in Gillette—would have been disqualified from my disqualification, and we had no time to arrange for another attorney to come in from out of town to discuss the case with him prior to the trial the next morning."

During the course of that same hearing, the following dialogue occurred between counsel and the court:

"THE COURT: But you did. You knew that both brothers were in jail because you had represented both of them in one way or another.

"[PUBLIC DEFENDER]: Well, I knew that Roger Gist—my first meeting and my first knowledge that he was in jail was on the 18th when I was called to come—

"THE COURT: The day before—

"[PUBLIC DEFENDER]: —to come and represent him—yes, the day before his trial."

At the hearing on the motion for a new trial which was based on ineffective assistance of trial counsel, the appointed attorney testified:

"I didn't subpoena Roger Gist because he pled not guilty at the arraignment and he hadn't been appointed counsel."

In *Chavez v. State*, Wyo., 604 P.2d 1341 (1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980), this court addressed questions which can arise when one attorney represents multiple defendants in a criminal case. If we apply the concepts there set forth to this particular situation, we would be forced to conclude that Roger Gist would not be permitted to claim that he was represented by the public defender's office at the time of Steve Gist's trial. There was no conflict which would have justified a claim of ineffective assistance of counsel on the part of Roger Gist in the context of *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). If there was no actual conflict because the public defender's office could have been relieved of its representation of Roger Gist before actually proceeding, we must consider whether the failure to pursue Roger Gist's testimony amounted to ineffective assistance of counsel to Steve Gist.

The public defender testified that he did not interview Roger Gist the night before Steve's trial because he concluded that a conflict of interest was present. It is sheer speculation to contemplate what the product of an interview of Roger might have been. At the hearing on the motion for the new trial premised on ineffective assistance, the public defender explained that he made a tactical decision not to call Roger Gist as a witness which he would not change even with the benefit of hindsight. We must test this position against a standard of reasonableness.

We use the standard for evaluating claims of ineffective assistance of counsel articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), *Frias v. State*, supra; *Munden v. State*, Wyo., 698 P.2d 621 (1985). That standard requires a demonstration that the performance of the attorney was deficient and that this deficiency prejudiced the defense of the case. In testing deficient performance, we must identify areas so serious that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. Specifically, in this instance, we are concerned with an investigation to determine the nature and availability of Roger Gist's testimony. In *Frias v. State*, supra, 722 P.2d at 145, we adopted the following language with respect to the duty to investigate:

"'* * * [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, *counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. * * *

" 'The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. * * * [W]hat investi-

gation decisions are reasonable depends critically on such information. * * *' (Emphasis added.) *Strickland v. Washington*, 104 S.Ct. at 2066."

■ We consider the actions of the attorney in light of all the circumstances in order to determine if they fall within the professional ambit of reasonableness, keeping in mind "that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in a particular case." *Strickland v. Washington*, supra, 466 U.S. at 690, 104 S.Ct. at 2065, 2066; *Campbell v. State*, Wyo., 728 P.2d 628 (1986). We do not evaluate those actions from a perspective of hindsight. We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment. *Strickland v. Washington*, supra; *Campbell v. State*, supra; *Murry v. State*, Wyo., 713 P.2d 202 (1986); *Munden v. State*, supra.

The deference which we afford to the decisions of counsel is manifested by the fact that only in *Frias v. State*, supra, has this court concluded that the assistance of counsel was ineffective, although the issue has been presented in a number of cases. In *Frias v. State*, supra, we identified several errors including a failure to conduct reasonable discovery and investigation, a failure to object to a juror who possibly was biased, and the waiver of a suppression hearing with respect to a taped admission. As in *Frias v. State*, supra, ineffective assistance of counsel usually will be demonstrated because of the culmination of several errors. Each case must be viewed in the total context of the representation afforded to determine if the defendant was denied his right to a fair trial. *Campbell v. State*, supra, *Frias v. State*, supra. The concept has been expressed in this way in *Kimmelman v. Morrison*, —— U.S. ——, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986):

"*Strickland* requires a reviewing court to 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'

466 U.S. at 690, 104 S.Ct. at 2066. It will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance. Since '[t]here are countless ways to provide effective assistance in any given case,' *Strickland,* supra, at 689, 104 S.Ct., at 2066, unless consideration is given to counsel's overall performance, before and at trial, it will be 'all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' *Strickland,* supra, at 689, 104 S.Ct. at 2065."

▆ Given the responsibility to evaluate adequate representation in the context of overall performance, still a single grievous error can so prejudice the right of a defendant to a fair trial that it will serve to support a conclusion that reasonably effective assistance was not afforded. *Smith v. Murray,* —— U.S. ——, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Kimmelman v. Morrison,* supra. It is our conclusion that defense counsel committed an error of that magnitude in this instance. Roger Gist was a known eye witness to the transaction which was the subject of Steve Gist's trial. He was potentially available to testify. Before an appropriate choice could be made, i.e., a tactical decision, it was incumbent upon counsel to attempt to determine what Roger Gist's testimony might be and whether Roger Gist would testify at Steve Gist's trial. The failure to pursue an interview of Roger Gist constituted an abrogation of counsel's duty to Steve Gist to conduct a reasonable investigation and to utilize any information obtained in providing a reasonable defense. In such circumstances, courts have had little difficulty in concluding that the attorney's tactical decision was unreasonable and that it was prejudicial to the right of the defendant to a fair trial. *Kimmelman v. Morrison,* supra; *Code v. Montgomery,* 799 F.2d 1481 (11th Cir.1986); *Sneed v. Smith,* 670 F.2d 1348 (4th Cir.1982); *State v. Tapia,* 151 Ariz. 62,

725 P.2d 1096 (1986); *People v. Corder,* 103 Ill.App.3d 434, 59 Ill.Dec. 200, 431 N.E.2d 701 (1982); *People v. Stepheny,* 46 Ill.2d 153, 263 N.E.2d 83 (1970), reversed and remanded after appeal on reversal and remand, 56 Ill.2d 237, 306 N.E.2d 872 (1974); *Commonwealth v. Simler,* 320 Pa. Super. 342, 467 A.2d 355 (1983); *King v. State,* Tex.Cr.App., 649 S.W.2d 42 (1983).

We support the general proposition that a decision as to whether to call a particular witness is a matter of trial tactics properly committed to the discretion of counsel. In *Campbell v. State,* supra, we held that the failure of the attorney to call several character witnesses did not constitute ineffective assistance in the light of the overall performance. This case is distinguishable because of the critical nature of Roger Gist's testimony. If Roger Gist had testified at trial as he testified at the hearing on the motion for a new trial, Steve Gist's chances of acquittal would have been materially enhanced. The requisite prejudice required for reversal is present.

▆ Before concluding our analysis, it is necessary to consider whether the public defender's belief that a conflict of interest was present would make his tactical decision sufficiently reasonable that there would not exist ineffective assistance of counsel. We hold that counsel's belief did not make the decision reasonable.

▆ The rule is clear that a criminal defendant is denied his right to effective assistance of counsel when his attorney is unable to protect his rights because of the divided loyalty flowing from a conflict of interest. *Cuyler v. Sullivan,* supra; *Holloway v. Arkansas,* supra; *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The representation of co-defendants is always suspect, but it does not always result in a conclusion of an actual conflict of interest. *Cuyler v. Sullivan,* supra. Because joint representation is suspect, however, a defendant should be afforded the opportunity to object to multiple representation when a potential conflict of interest is present. If he does object, separate counsel should be appointed.

*Cuyler v. Sullivan,* supra; *Holloway v. Arkansas,* supra. After objection, the failure of the court to appoint separate counsel justifies a presumption on review that an adverse result was due to ineffective assistance of counsel. *Holloway v. Arkansas,* supra.

 If the defendant does not object to a possible conflict of interest prior to trial, he assumes a heavier burden in an effort to establish ineffective assistance of counsel. Then he must demonstrate an actual rather than potential conflict which adversely affected the performance of his attorney. *Cuyler v. Sullivan,* supra. If he does demonstrate an actual conflict and the adverse effect on performance, the reviewing court may presume prejudice because under those circumstances counsel is unable to function in the manner contemplated by the Sixth Amendment to the United States Constitution. *Strickland v. Washington,* supra; *Cuyler v. Sullivan,* supra. The presence of an actual conflict is essential. The "possibility of a conflict is insufficient to impugn a criminal conviction" under those circumstances. *Cuyler v. Sullivan,* supra. The reviewing court is charged with the duty of searching the record for the presence of an actual conflict and adverse performance due to that conflict. *United States v. Gambino,* 788 F.2d 938 (3d Cir.1986), cert. denied, *Gambino v. United States,* — U.S. ——, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986); *Ross v. Heyne,* 638 F.2d 979 (7th Cir.1980).

Our analysis of this situation as set forth above does not demonstrate the presence of an actual conflict of interest. The conflict could have been avoided in accordance with *Chavez v. State,* supra, and the cases cited above. Even so, the record does disclose a bona fide belief on the part of the public defender that he was involved in an actual conflict situation. The impact on Steve Gist's defense was exactly the same as if the actual conflict had been present. Counsel's belief resulted in his conclusion not to attempt to pursue Roger Gist's testimony. That is the same result which would occur if there were an actual conflict.

 We cannot conclude, however, that this made the decision of the public defender reasonable. His duty to his first client, Steve Gist, demanded that he attempt to resolve the conflict of interest in a way which would permit him to pursue the testimony of Roger Gist. He should have brought this situation to the attention of the court; requested the appointment of counsel other than the public defender's office for Roger Gist; asked for a continuance, if necessary, in order to pursue Roger Gist's testimony; and then he should have proceeded to develop and make available the testimony of Roger Gist to assist his client, Steve Gist. Whatever the ultimate result of that effort might have been, it should have been pursued, and the assumption of frustration of that effort is not a permissible basis for a valid tactical decision.

Steve Gist was not afforded effective assistance of counsel at his trial. His motion for a new trial premised upon the lack of effective assistance of counsel should have been granted, and it was an abuse of discretion to deny it. The decision of the district court is reversed, and the case is remanded with instructions to vacate Steve Gist's conviction and afford him a new trial on the merits.

MACY, J., filed a dissenting opinion in which BROWN, C.J., joined.

MACY, Justice, dissenting with whom BROWN, Chief Justice, joins.

I dissent. The failure to question Roger Gist does not rise to the level of ineffective assistance of counsel to Steve Gist. It is not sheer speculation to contemplate what the product of an interview with Roger might have been. Roger pleaded not guilty to being involved in the transaction, so why is it reasonable to now say in hindsight that, if he were asked, he would have pleaded guilty to the delivery charge lodged against Steve? It is unreasonable to require defense counsel to question everyone involved in the same transaction to see if anyone will admit to the crime alleged to have been committed by their

client, especially when everyone has already denied in open court that they were involved.

This is a classic case of newly discovered evidence. The majority in substance have held that, because Steve knew Roger delivered the marijuana, it was not new evidence when Roger admitted making the delivery. The majority confuse knowledge with evidence. The evidence prior to trial was that Roger denied any involvement in the drug transaction. The newly discovered evidence is that, after Steve's trial, Roger admitted making the delivery.