767 P.2d 5

**STATE of Arizona, Appellee,**

v.

**Reynaldo TAPIA, Appellant.**

**No. CR–87–0266–AP.**

Supreme Court of Arizona.

Dec. 8, 1988.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Div., Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Constance L. Trecartin, Tucson, for appellant.

GORDON, Chief Justice.

## JURISDICTION

Appellant, Reynaldo Tapia, appeals from his convictions for first-degree murder, armed robbery, and second-degree burglary. The trial court imposed concurrent sentences of life imprisonment without the possibility of parole for 25 years for first-degree murder, 10.5 years for armed robbery and four years for burglary. This Court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4033, and –4035.

## FACTS

This case arises from the murder of Lyllis Wilson during the burglary of her home at 423 North Main Street in Tucson.

Marie Williamson lives at 419 North Main and owns the houses at 419 and 423 North Main. She and Mrs. Wilson, both in their 80's, were friends and neighbors for nearly 50 years.

On June 15, 1983, Mrs. Williamson hired appellant and Frank Martinez (Spike) to do yard work at both residences. That same day, appellant helped Mrs. Wilson and her daughter, Marilyn Schenck carry groceries to the Wilson residence.

During the late evening hours of June 18 or the early morning of June 19, intruders entered, ransacked and burglarized Mrs. Wilson's home. They brutally beat her with a pair of pruning shears. She died two weeks later without ever regaining consciousness.

Detective Perry Lowe of the Tucson Police Department investigated the case and first interviewed appellant on July 11, 1983. At that time, appellant admitted to doing yard work at the victim's residence, but denied any knowledge of the burglary and the murder. He also denied entering and carrying groceries into the victim's house on June 15.

On October 24, 1983, Officer Fuentes of the Tucson Police Department arrested appellant on an unrelated aggravated assault charge. He advised appellant of his *Miranda* rights at the scene and appellant indicated that he understood. When Officer Parella arrived at the scene he asked if

Officer Fuentes gave appellant his *Miranda* rights, both Officer Fuentes and appellant acknowledged that he had. Because Detective Lowe previously indicated his desire to speak with appellant on the Wilson murder, Officer Fuentes transported appellant to the Tucson Police Department. On arrival, Officer Fuentes brought appellant to an interview room. Appellant again acknowledged receipt of his *Miranda* rights when Detective Lowe entered the room and spoke with Officer Parella.

Officer Parella remained in the room while Detective Lowe interviewed appellant. In a tape-recorded interview, Detective Lowe told appellant that two witnesses implicated appellant in the burglary and the murder. In appellant's first statement to Detective Lowe, he denied any involvement and stated that Frank Martinez (Spike) committed the burglary and assault on the victim.

Detective Lowe then turned the tape recorder off and told appellant that he did not believe him and that he thought appellant was lying. Detective Lowe told appellant that the punishment for first-degree murder was life imprisonment or death. Appellant stated "Well, if you are going to charge me, charge me." At that, Detective Lowe left the room for several minutes and returned with the case file and a booking slip. He began to fill out the booking slip with appellant's name and date of birth. When he wrote first-degree murder as the charge, appellant told him to stop—that he would tell him what really happened.

Again, Detective Lowe turned on the tape recorder and appellant gave a second statement. Appellant admitted his participation in the burglary and gave a detailed description of the inside of Mrs. Wilson's house. He stated that he and Spike entered the house together. Appellant was in the process of taking $80 to $90 from the victim's purse when Spike discovered that someone was in the house. Appellant said he fled immediately and that later, Spike came to his house and told him that he "beat up the old lady."

The entire interview lasted approximately an hour and a half. Officer Fuentes then drove appellant to the county jail. He reminded appellant of his *Miranda* rights in the patrol car and appellant repeated his second statement, again admitting his participation in the burglary.

Prior to appellant's first trial in 1984, defense counsel moved to suppress appellant's statements. After a hearing, the trial court denied the motion and admitted the statements into evidence. At his first trial, appellant testified that his statements made to police on July 11, 1983, and October 24, 1983, were lies.

The jury convicted appellant at his first trial. He appealed and asserted ineffective assistance of counsel. We agreed, reversed and remanded the case for a new trial. *State v. Tapia,* 151 Ariz. 62, 725 P.2d 1096 (1986).

On remand, defense counsel reasserted the motion to suppress all of appellant's statements, but offered no new evidence. The trial court considered the testimony taken at the hearing along with the testimony of police officers at the first trial and again denied the motion.

At the second trial, the jury convicted appellant of first-degree murder, armed robbery, and burglary. Appellant now appeals and asserts that his confessions were involuntary.

## MIRANDA WARNINGS

■ Voluntariness and *Miranda* violations are two separate inquiries. *State v. Montes,* 136 Ariz. 491, 494, 667 P.2d 191, 194 (1983). The necessity of giving *Miranda* warnings relates to the admissibility of a confession based upon defendant's being apprised of his right to counsel and waiving that right and not to its voluntariness. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Montes,* 136 Ariz. at 494, 667 P.2d at 194.

Although appellant does not specifically raise the *Miranda* issue on appeal, because of suggestions of a possible violation in the record, we address the validity of the *Miranda* warnings given.

■ To satisfy *Miranda,* the State must show that appellant understood his rights and intelligently and knowingly relin-

quished those rights before custodial interrogation began. *State v. Rivera*, 152 Ariz. 507, 513, 733 P.2d 1090, 1096 (1987).

Officer Fuentes testified that he gave appellant his *Miranda* rights at the scene and appellant indicated he understood. At his second trial, appellant testified that although he stated he understood his rights at the time, he really didn't. Appellant was 18 years old at the time of his arrest, speaks English poorly and never completed the eighth grade. He acknowledged having received his *Miranda* rights many times before, but because of his admitted "wise guy attitude" he wasn't paying attention. Appellant also asserts that he would be unable to explain his rights if asked to do so.

Officer Parella testified that he discussed appellant's *Miranda* rights at the arrest scene with both Officer Fuentes and appellant. Appellant again indicated he understood his rights. Detective Lowe testified that appellant acknowledged that he had received and understood his rights at the start of the interview. Following the interview, Officer Fuentes reminded appellant of his rights on the way to the county jail and appellant again indicated he understood.

■ Authorities advised and reminded appellant of his *Miranda* rights at least four times. Each time, appellant acknowledged he understood his rights. He had ample opportunity to ask questions and clarify anything he did not understand, yet he failed to do so. Instead, appellant freely answered questions, never attempted to terminate questioning and never asked for a lawyer. Answering questions after police properly give the *Miranda* warnings constitutes a waiver by conduct. *State v. Knapp*, 114 Ariz. 531, 538, 562 P.2d 704, 711 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).

■ We also note that the interrogation by Detective Lowe was not excessive and lasted, at most, an hour and a half. In addition, appellant's prior criminal record indicates a familiarity with the criminal process. In fact, appellant admits to having received his *Miranda* rights on numerous occasions in the past. Moreover, appellant's eighth grade education and limited proficiency in English does not preclude a finding that appellant validly waived his *Miranda* rights. *See Montes*, 136 Ariz. at 495–96, 667 P.2d at 195–96; *Rivera*, 152 Ariz. at 513, 733 P.2d at 1096.

In *State v. Curtis*, 10 Ariz.App. 38, 455 P.2d 988 (1969), defendant asserted his youth, lack of education and difficulty with English rendered his confession involuntary. The court of appeals deferred to the trial court's determination of credibility and held the confession admissible.

■ Therefore, despite appellant's assertions at his second trial, we find ample evidence that police properly informed appellant of his *Miranda* rights and that appellant knowingly and intelligently waived his rights so as to render his confessions admissible.

## VOLUNTARINESS OF CONFESSION

Appellant asserts that his confessions were involuntary because they were induced by: threats that appellant would receive the death penalty or life imprisonment; threats that appellant would never see his girl friend or son again; the coercive tactics of putting appellant's name on a booking slip for first-degree murder; and promises that if he helped convict Spike, he would only be charged with burglary. Appellant also asserts that his allegedly involuntary confession to Detective Lowe tainted his subsequent confession to Officer Fuentes so as to render that second confession involuntary as well. We will address each of these allegations separately.

■ In Arizona, confessions are prima facie involuntary. *State v. Arnett*, 119 Ariz. 38, 42, 579 P.2d 542, 546 (1978); *State v. Edwards*, 111 Ariz. 357, 360–61, 529 P.2d 1174, 1177–78 (1974). The State has the burden to show by a preponderance of evidence that the confession was freely and voluntarily made. *State v. Knapp*, 114 Ariz. 531, 538, 562 P.2d 704, 711 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). The trial court must look to the totality of the circumstances in

evaluating the voluntariness of a confession to decide whether a defendant's will has been overborne. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–27, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973); *State v. Hall*, 120 Ariz. 454, 456, 586 P.2d 1266, 1268 (1978); *State v. Edwards*, 111 Ariz. 357, 361, 529 P.2d 1174, 1178 (1974). All questions involved in determining whether a confession is voluntary are for the trial court. A.R.S. § 13–3988. Absent a showing of clear and manifest error, we will not disturb the trial court's ruling. *State v. Jordan*, 114 Ariz. 452, 455, 561 P.2d 1224, 1227 (1976); *State v. Edwards*, 111 Ariz. 357, 361, 529 P.2d 1174, 1178 (1975).

■ Confessions are involuntary if the court, considering all the circumstances, determines that one of the following factors exists: (1) impermissible conduct by police, (2) coercive pressures not dispelled or (3) confession derived directly from a prior involuntary statement. *State v. Gretzler*, 126 Ariz. 60, 82, 612 P.2d 1023, 1045 (1980), *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Appellant asserts that each of these factors exists in this case.

First, appellant argues that his confession was involuntary because Detective Lowe impermissibly induced the confession by threats that appellant would receive the death penalty or life imprisonment. A factual dispute exists as to the words actually spoken by Detective Lowe. Detective Lowe testified at the suppression hearing that he told appellant that the punishment for a first-degree murder conviction could be life imprisonment or death. Officer Parella confirmed Detective Lowe's testimony and stated that Detective Lowe made the statement while explaining the differences between a homicide and a burglary. Appellant's version of the statement differs from that of Detective Lowe and Officer Parella and reflects his subjective perceptions. He testified that Detective Lowe's statements were far more personal. For example, he claimed Detective Lowe stated "Ray, look you are facing the death penalty" and that Detective Lowe would see to it

that the death penalty be imposed because the crime was so brutal.

Appellant cites *State v. Emery*, 131 Ariz. 493, 642 P.2d 838 (1982), in support of his position that Detective Lowe's statements concerning the death penalty rendered his confession involuntary. In *Emery*, police officers admitted that it was not only possible, but that it was probable that they discussed the likelihood of defendant going to the gas chamber during their interrogation of defendant on a first-degree murder charge. In fact, the defendant in *Emery* testified that one officer told him they had enough evidence to put him in the gas chamber. *Id.* at 497–502, 642 P.2d at 842–47. These conversations took place while the tape recorder was off but, more importantly, the conversations occurred *after* the defendant invoked his right to counsel. This Court held that the conversation concerning the gas chamber constituted the functional equivalent of interrogation and because police officers initiated the discussion after defendant invoked his right to counsel, the defendant's confession was involuntary. *Id.* at 502, 642 P.2d at 847. In contrast with *Emery*, appellant never invoked his right to counsel.

■ When there is a conflict between the testimony of the appellant and that of police officers, the resolution is for the trial court. *State v. Jerousek*, 121 Ariz. 420, 424, 590 P.2d 1366, 1370 (1979); *State v. Williams*, 27 Ariz.App. 279, 285, 554 P.2d 646, 652 (1976). The critical issue does not rest on the words spoken, but rather it is whether or not Detective Lowe coerced the confession by his words, conduct, or action. The conversation took place during the 15– to 20–minute period when the tape recorder was turned off. The trial court considered the appellant's credibility as a witness against that of the two police officers, and chose to believe the police officers. There is ample evidence to support the finding that appellant's confession was voluntary and no evidence of clear and manifest error.

We find no impermissible conduct in advising a defendant of the nature of the charges against him nor of the potential

sentences that a court may impose should a jury convict the defendant of those charges. The proper test to determine whether Detective Lowe's statements compelled appellant's confession is an objective evaluation of Detective Lowe's conduct, not appellant's subjective perceptions of reality. *See State v. Carrillo*, 156 Ariz. 125, 136–37, 750 P.2d 883, 894–95 (1988).

■ Next, appellant argues that his confession was involuntary because Detective Lowe induced the confession with threats that appellant would never see his girl friend or child again. The sole evidence to support this contention is appellant's own testimony.

Appellant cites *United States v. Tingle*, 658 F.2d 1332 (9th Cir.1981), in support of his position that the psychological coercion created by this alleged statement by Detective Lowe rendered his confession involuntary. In *Tingle*, the police officer expressly testified that he told the defendant she would not see her two-year-old child for awhile if she went to prison. The defendant was sobbing, noticeably shaken, and crying for at least 10 minutes. *Id.* at 1334. All of which suggests that the defendant in *Tingle* felt great psychological stress before she confessed. *Id.* at 1337.

Here, the record does not reflect any such evidence of psychological coercion nor is there any evidence to support appellant's assertion that Detective Lowe even made any such statement. However, assuming Detective Lowe did make such a statement, in stark contrast to the defendant in *Tingle*, appellant was friendly, cooperative, talkative, familiar with the criminal process, received his *Miranda* warnings many times before and displayed an admitted "wise guy attitude." Appellant did not display any objective signs of distress, confusion, or incomprehension. He cooperated without protest. Under the circumstances, we find no evidence of psychological coercion to render his confession involuntary.

Appellant next argues that putting his name on the booking slip was a coercive tactic designed by Detective Lowe to induce appellant's confession and render it involuntary. After Detective Lowe told appellant that he did not believe him, appellant said "Well, if you are going to charge me, charge me." Detective Lowe responded by doing exactly that. Sitting beside appellant, he filled out the booking slip with name and date of birth and indicated the charge as first-degree murder. As soon as he wrote the words "first-degree murder" appellant told him to stop and indicated he would tell him what really happened. Appellant then proceeded to detail his participation in the burglary.

■ A statement induced by fraud or trickery is not made involuntary unless there is evidence that the defendant's will was overborne or that the confession was false or unreliable. *State v. Winters*, 27 Ariz.App. 508, 511, 556 P.2d 809, 812 (1976).

In *Winters*, police officers lied to the defendant and told him that his fingerprints matched those at the scene when in fact the officer knew they did not. The court of appeals held that the confession was voluntary and admissible. In spite of the fact that the officer's deception fraudulently induced the defendant to confess to the crime, the evidence indicated that the defendant's will was not overborne and the statements were neither false nor unreliable as a result of the deception. *Id.* at 511, 556 P.2d at 812.

In an armed robbery case, *State v. Carr*, 108 Ariz. 203, 495 P.2d 134 (1972), police told the defendant that they took two sets of fingerprints from the cash register and implied that the fingerprints were his. The defendant confessed. Police did not actually say that the fingerprints were his, but the implication was clear. The court held the confession admissible.

It is unclear whether Detective Lowe actually intended to proceed with the first-degree murder charge at that time or whether he merely used the booking slip as a device to elicit some response from appellant. Most likely, he intended the latter. However, not all efforts to persuade an accused criminal to confess are improper. So long as there is no coercion or duress, an officer may seek a confession from an

accused. Moreover, because of the nature of law enforcement, courts will tolerate some form of police gamesmanship so long as the games do not overcome a suspect's will and induce a confession not truly voluntary. *See State v. Carrillo*, 156 Ariz. 125, 136, 750 P.2d 883, 894 (1988); *State v. Sanders*, 101 Ariz. 410, 413, 420 P.2d 281, 284 (1966).

■ Considering the totality of the circumstances, we find no evidence that appellant's will was overborne or that his statement was false or unreliable, nor do we consider Detective Lowe's actions to reflect the amount of coercion necessary to render appellant's confession involuntary. Rather, the record reflects that the confession was a product of free will and not that of an overly coercive environment.

Finally, appellant argues that his confession was involuntary because Detective Lowe allegedly induced the confession with promises that if appellant agreed to help convict Spike, appellant would only be charged with burglary. Again, the sole evidence for this allegation is appellant's own testimony.

Officer Parella testified that he did not make any promises or threats to appellant during the interrogation. Detective Lowe testified that he did not make any promises or threats to get appellant to make a statement. Officer Fuentes testified that immediately after the interview, appellant never mentioned any promises or threats made by Detective Lowe or Officer Parella. And, appellant himself testified that authorities "never used the words promises or guarantees."

■ A confession to be free and voluntary within the meaning of the fifth amendment of the United States Constitution must not have been obtained by direct or implied promises, however slight. *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659 (1964). However, under some circumstances, direct promises that officers would tell the prosecutor if defendant cooperated are permissible, but promises that officers would see to it that a defendant would go to prison if he failed to cooperate are not. *See Tingle*, 658 F.2d at 1336, nn. 4–5.

■ Other than appellant's own testimony, there is no evidence that Detective Lowe made promises of any kind, let alone direct promises. However, even if we were to believe appellant's testimony that, if he cooperated, Detective Lowe promised to talk to the district attorney and the judge, such a promise is permissible and would not render his confession involuntary.

Police made an implied promise to the defendant in *State v. McFall*, 103 Ariz. 234, 439 P.2d 805 (1968). In *McFall*, the jury convicted the defendant of obtaining narcotics by forged prescriptions. The defendant, an admitted narcotics user, testified that during the interrogation, when he asked police for drugs, the officers told him they would discuss that after they finished the matter at hand. If true, the defendant's testimony evidenced an implied promise by police. Because the officers did not deny the existence of that promise, the court held that the confession was involuntary.

■ Here, both Officer Parella and Detective Lowe unequivocally testified that they made no promises, direct or implied. When there is a conflict in the testimony, the trial court must resolve that conflict. *State v. Williams*, 27 Ariz.App. 279, 285, 554 P.2d 646, 652 (1976) (an alleged promise, which was no more than a statement that defendant's answers might make a difference in the charges, was not the sort of threat or promise that would make the statements involuntary). It is clear that the trial court found no impermissible promises to render appellant's confession involuntary. We agree.

■ Appellant must also show that he actually relied on the existence of a promise for that promise to render his confession involuntary. *See State v. Hensley*, 137 Ariz. 80, 87, 669 P.2d 58, 65 (1983); *State v. Jordan*, 114 Ariz. 452, 454–55, 561 P.2d 1224, 1226–27 (1976). Appellant does not present any evidence, other than his own testimony, from which we could infer the existence of a direct promise, an im-

plied promise or even a reasonable belief that Detective Lowe promised him anything at all, let alone that he relied on a promise. Appellant admittedly interrupted Detective Lowe as he filled out the booking slip only to volunteer his statement as to what really happened. Even if we accepted appellant's testimony as to the existence of a promise, we find no evidence of reliance.

Accordingly, we hold that police properly informed appellant of his *Miranda* rights and that he knowingly and intelligently waived those rights and voluntarily confessed. Under the circumstances, we find no impermissible conduct by police and no evidence of coercion to render appellant's confession involuntary. Because we find that appellant's confession to Detective Lowe was voluntarily made, his subsequent confession to Officer Fuentes was untainted, voluntary, and admissible.

We searched the record for fundamental error according to the mandate of A.R.S. § 13–4035, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). We find none and affirm the conviction.

FELDMAN, V.C.J., and CAMERON, HOLOHAN, MOELLER, JJ., concur.