NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BUDDY O'BRIAN WALLACE, *Appellant*.

No. 1 CA-CR 19-0089
FILED 6-23-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201501268
The Honorable Richard D. Lambert, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.[1]

---

**M c M U R D I E**, Judge:

¶1          Buddy Wallace appeals his convictions and sentences for two counts of second-degree murder and one count of first-degree burglary and theft of means of transportation. For the following reasons, we vacate the conviction for one count of second-degree murder and affirm the remaining convictions and sentences.

## FACTS[2] AND PROCEDURAL BACKGROUND

¶2          In October 2015, a seventy-year-old man (the "victim") was stabbed to death in his home. A neighbor discovered the victim's body and called 9-1-1. The police could not locate the victim's truck.

¶3          During their investigation, the police learned that another neighbor encountered Wallace shortly before the murder. Wallace was looking for the victim's home, which was approximately 300 or 400 feet away from where the conversation occurred. The officers discovered distinctive shoe prints in the area, with "rivets in the heels" and "a circle with the letter H in the center" of a "cowboy style boot with a pointed toe." The prints were traced to the victim's home.

¶4          A few days later, the officers found the victim's truck, surrounded by the same distinctive shoe prints. Boots with the same identifying marks and splashed with the victim's blood were discarded on

---

[1]     Judge Paul J. McMurdie replaced the Honorable Kenton D. Jones, who was originally assigned to this panel. Judge McMurdie has read the briefs and reviewed the record.

[2]     We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against the defendant. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

the roadway nearby. The police identified Wallace's fingerprint recovered from an ashtray inside the victim's truck.

¶5        When arrested and questioned, Wallace initially denied involvement. He later confessed to killing the victim because he thought the victim was a child molester. Wallace also admitted he stole and abandoned the victim's truck, left his boots behind, and threw the knife he used in the attack into the Colorado River.

¶6        Before the trial, Wallace moved to suppress his confession, arguing the statements were involuntary and given in violation of his rights according to *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). The court listened to recordings of Wallace's interview with the police and heard testimony from Wallace and the detectives involved in the questioning. The court determined the interview was "like two friends talking to each other in the calmest manner" and found Wallace's suggestion that the statements were coerced "d[id] not make any sense at all." The court also found the detectives' testimony that they gave Wallace appropriate *Miranda* warnings to be credible. Accordingly, the court denied the motions.

¶7        A jury convicted Wallace of one count of second-degree murder as charged ("Count 1"), one count of second-degree murder as a lesser-included offense of felony murder ("Count 2"), and one count each of first-degree burglary ("Count 3") and theft of means of transportation ("Count 4"). The jury found two aggravating factors that applied to all counts: that the victim was over sixty-five years of age, and the victim was a military veteran. The jury found four additional aggravators applied either to the murder and burglary convictions, or both: emotional harm to the victim's family, the victim had a medical condition that required him to use an oxygen tank, the murder involved the use of a dangerous instrument, and the murder demonstrated extreme callousness.

¶8        After considering the evidence Wallace proffered in mitigation, the superior court sentenced Wallace to aggravated concurrent terms of twenty-five years' imprisonment for the second-degree murder convictions and twenty years' imprisonment for the first-degree burglary conviction, followed by a consecutive aggravated term of seven years' imprisonment for the conviction for theft of means of transportation. Wallace appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1), (4).

**DISCUSSION**

### A. Second-Degree Murder Is Not a Lesser-Included Offense of Felony Murder.

¶9 Wallace argues the superior court erred by instructing the jury that it could consider second-degree murder as a lesser-included offense of felony murder. The State concedes error, and we agree. "[T]here are no lesser included offenses of felony murder." *State v. Murray*, 184 Ariz. 9, 34 (1995). Furthermore, "the crime of murder of a single victim necessarily results in one [murder] conviction and one sentence." *State v. Williams*, 232 Ariz. 158, 161, ¶ 10 (App. 2013). We, therefore, vacate the conviction on Count 2.

### B. The Superior Court Acted Within its Discretion by Denying Wallace's Motions to Suppress.

¶10 Wallace argues his statements to the police were not voluntary and obtained in violation of his *Miranda* rights. *See State v. Tapia*, 159 Ariz. 284, 286 (1988) ("Voluntariness and *Miranda* are two separate inquiries."). On review of the denial of a motion to suppress, we consider only the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's ruling, *State v. Maciel*, 240 Ariz. 46, 49, ¶ 9 (2016), and defer to the court's credibility determinations, *State v. Mendoza-Ruiz*, 225 Ariz. 473, 475, ¶ 6 (App. 2010). We review the court's legal conclusions *de novo* and will only reverse if there is "clear and manifest error." *Id.* (quoting *State v. Newell*, 212 Ariz. 389, 396, ¶ 22 & n.6 (2006)).

#### 1. The Confession did not Violate *Miranda*.

¶11 "The Fifth Amendment to the U.S. Constitution shields all persons from compulsory self-incrimination." *Maciel*, 240 Ariz. at 49, ¶ 10. "To safeguard this privilege, law enforcement officers must provide the well-known *Miranda* warnings before interrogating a person in custody." *Id.* (citing *Miranda*, 384 U.S. at 478–79). "To satisfy *Miranda*, the State must show that [the defendant] understood his rights and intelligently and knowingly relinquished those rights before custodial interrogation began." *Tapia*, 159 Ariz. at 286–87. "Failure to administer *Miranda* warnings creates a presumption of compulsion." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). "Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*." *Id.*

4

¶12        Wallace argues insufficient evidence supports the superior court's conclusion that he received a complete *Miranda* warning. The record does not support this assertion. One detective testified she provided Wallace with the full *Miranda* advisement from memory; the second testified he read Wallace the full *Miranda* advisement from a department-issued card. The officers testified that after they gave Wallace the warnings, he indicated that he understood his rights. While it is true the advisements were not recorded, police are not required to record the warning of a suspect. The court acted within its discretion to reject Wallace's assertions that he was improperly advised of his *Miranda* rights and accept the detectives' testimony. *See State v. Ellison*, 213 Ariz. 116, 127-28, ¶¶ 32-33 (2006) (rejecting the defendant's claim of error that "presume[d] the truth of his version of events, despite contrary testimony by the detectives").

¶13        Wallace argues he neither understood nor expressly waived his *Miranda* rights. However, he testified he was familiar with his *Miranda* rights at the suppression hearing, and the detectives agreed Wallace stated he understood his rights both times he was advised of his rights. *See Ellison*, 213 Ariz. at 128, ¶ 33 (finding no compulsion where the defendant "admitted being familiar with, and understanding, his *Miranda* rights"). Wallace also argues his lack of education inhibited his understanding of the rights. However, a defendant's cognitive deficiencies "are generally not relevant to a determination of voluntariness unless the police knew or should have known about them." *State v. Blakley*, 204 Ariz. 429, 437, ¶ 31 (2003). There is no evidence the police had such knowledge here. Nor does a limited education preclude a finding that a defendant validly waived his *Miranda* rights. *See Tapia*, 159 Ariz. at 287. And although the detectives did not specifically ask Wallace if he wanted to waive his rights, an express waiver is not required. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010); *see also State v. Moreno-Medrano*, 218 Ariz. 349, 352, ¶ 5 (App. 2008) (affirming a finding that a defendant waived his Miranda rights by "engaging in 'a course of conduct indicating waiver'" (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979))). Wallace answered the detectives' questions, and "[a]nswering questions after police properly give the *Miranda* warnings constitutes a waiver by conduct." *Tapia*, 159 Ariz. at 287.

¶14        Wallace contends for the first time on appeal that he invoked his right to remain silent and to counsel during the interview. To support this argument, Wallace relies on several instances where he made statements and inquiries like: "Are we done now?"; "Are we finished?"; "Let's go"; "I'll go to my cell"; "Can I have my phone call?"; "Are we done?"; "Are we finished?"; and "Let's go. Take me to jail." He also relies on an exchange where the detective told him he would be given an attorney,

to which Wallace responded, "Hope so." In our discretion, we review this argument for fundamental, prejudicial error. *See Newell*, 212 Ariz. at 398, ¶ 34.

**¶15** "An invocation of the right to silence must be unequivocal and unambiguous, as judged from the perspective of a reasonable officer under the totality of the circumstances." *State v. Payne*, 233 Ariz. 484, 501, ¶ 40 (2013); *see also Berghuis*, 560 U.S. at 381–82. If the invocation is ambiguous or equivocal, "the police are not required to end the interrogation . . . or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Payne*, 233 Ariz. at 501, ¶ 40 (quoting *Berghuis*, 560 U.S. at 381).

**¶16** Wallace's purported invocation was ambiguous and equivocal. He did not explicitly ask the officers to end the interview, refuse to answer their questions, or affirmatively request counsel. *Davis v. United States*, 512 U.S. 452, 462 (1994) (finding the statement "maybe I should talk to a lawyer" was not an unequivocal request for counsel); *State v. Eastlack*, 180 Ariz. 243, 250-51 (1994) (same for the statement "I think I better talk to a lawyer first"); *cf. State v. Finehout*, 136 Ariz. 226, 230 (1983) (holding statement that "I'm not going to say anymore until I talk to a lawyer" was an unequivocal request for an attorney that triggered *Miranda*). His requests for a phone call, to leave, and to go to jail were not unequivocal, particularly when followed by re-engagement with the questioning. *See Payne*, 233 Ariz. at 501, ¶¶ 40-41 (holding that the defendant's statement that he did not "wanna talk anymore" followed by a request to call family "and then I'll talk" did not unequivocally invoke the right to silence); *State v. Lawson*, 144 Ariz. 547, 555 (1985) (finding that the statement "I've got nothing to say" did not invoke the right to remain silent where "a fair reading" indicated it was "no more than a response" to an officer's questions).

**¶17** Finally, although Wallace testified that he asked for an attorney before being advised of his *Miranda* rights, the detectives testified to the contrary. The superior court found Wallace's testimony was not credible and acted within its discretion by accepting the detectives' testimony. We discern no error based upon the court's reasonable resolution of contradictory evidence. *See Ellison*, 213 Ariz. at 127–28, ¶¶ 32–33 ("The trial court generally is responsible for resolving conflicts of testimony.").

## 2. Wallace's Statement Was Made Voluntarily.

**¶18** "To be admissible, a [defendant's] statement must be voluntary, not obtained by coercion or improper inducement." *Ellison*, 213 Ariz. at 127, ¶ 30 (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)); *see also* A.R.S. § 13-3988(A). A confession is presumed to be involuntary. *Ellison*, 213 at 127, ¶ 31. Therefore, the State has the burden of proving by a preponderance of the evidence "that the confession was freely and voluntarily made." *State v. Montes*, 136 Ariz. 491, 496 (1983). When evaluating voluntariness, "the trial court must look to the totality of the circumstances surrounding the confession and decide whether the will of the defendant has been overborne." *State v. Lopez*, 174 Ariz. 131, 137 (1992) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). In making this determination, we consider several factors, including whether *Miranda* warnings were given, the environment and duration of the interrogation, and whether officers engaged in "impermissible police questioning." *Blakley*, 204 Ariz. at 436, ¶ 27.

**¶19** Wallace argues the evidence establishes that he was denied food, water, shoes, a jacket, and a phone call during his police interview and that these circumstances establish his statements were not voluntary. Wallace did state at various points that he was cold, hungry, and tired. Still, the superior court, after considering the entirety of the evidence, including a recording of the interview, nonetheless determined the environment was not coercive. Instead, the court found the detectives were calm and patient during the two-hour interview, offered to get Wallace food, and consistently asked only for the truth, even indicating a willingness to follow up on any other leads Wallace could provide. *See Blakely*, 204 Ariz. at 436, ¶ 29 ("Mere advice that it would be better to be truthful is a permissible interrogation tactic.").

**¶20** Wallace also argues the detectives "used lengthy periods of silence in a coercive way." The superior court acknowledged the periods of silence but concluded that, under the circumstances, the long pauses indicated that Wallace was "retrospect or contemplating." And although Wallace testified "[i]t did not seem like [he] was going to leave the interview until [he] told [the detectives] what they wanted to hear," the court found Wallace's testimony confusing and not credible. We defer to the court's reasonable evaluation of the evidence on these points, *see Ellison,* 213 Ariz. at 127-28, ¶¶ 32-33, and find no abuse of discretion.

## C. The Superior Court's Consideration of the Victim's Status as a Military Veteran Was Not Error.

**¶21** Wallace argues the superior court erred by considering the victim's military-veteran status as an aggravating factor. Because Wallace failed to object at trial, we review for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). We find none.

**¶22** Under A.R.S. § 13-701(C), the superior court may impose an aggravated term "if one or more of the circumstances alleged to be in aggravation of the crime are found to be true by the trier of fact beyond a reasonable doubt or are admitted by the defendant." *See also State v. Martinez*, 210 Ariz. 578, 584, ¶ 21 (2005) ("[A] jury finding of a single aggravating factor establishes the facts legally essential to expose the defendant to the maximum sentence prescribed in section 13–702."). Where the defendant challenges the court's consideration of a factor, he may establish prejudice only if, in the absence of the challenged factors, no aggravator remains to sustain the aggravated sentence. *See State v. Cleere*, 213 Ariz. 54, 58, ¶ 11 (App. 2006).

**¶23** Wallace does not contest the jury's findings or the judge's reliance on the remaining aggravators. He thereby fails to prove the alleged error prejudiced him. Moreover, although Wallace contends that he "would likely" have received a more lenient sentence if the superior court did not consider the victim's military service, nothing in the record supports his contention. Mere speculation that a court may have imposed a lesser sentence does not establish prejudice for fundamental-error review. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006). Accordingly, we cannot say the court erred in imposing an aggravated sentence.

## D. The Superior Court Acted Within its Discretion by Weighing the Mitigating Factors.

**¶24** Wallace contends the superior court abused its discretion by failing to attach sufficient weight to several mitigating factors he presented at sentencing and, consequently, improperly imposed an aggravated sentence. "We will not disturb a sentence that is within the statutory range absent an abuse of the trial court's discretion." *State v. Joyner*, 215 Ariz. 134, 137, ¶ 5 (App. 2007). "The trial court is in the best position to determine the evidence surrounding the aggravating and mitigating factors and which factors should be given credence." *State v. Carbajal*, 177 Ariz. 461, 463 (App. 1994).

¶25      Wallace admits that while the court must consider mitigation evidence, *see* A.R.S. § 13-701(E), the court "is not required to accept such evidence," *State v. Stokley*, 182 Ariz. 505, 519 (1995); *see also State v. Cazares*, 205 Ariz. 425, 427, ¶ 8 (App. 2003) ("[A] sentencing court is not required to find that mitigating circumstances exist merely because mitigating evidence is presented; the court is only required to give the evidence due consideration."); *Carbajal*, 177 Ariz. at 463 ("The consideration of mitigating circumstances is entirely within the discretion of the trial court."). The record here reflects the court received and therefore considered character letters, mental health records, and information regarding Wallace's methamphetamine use and history of trauma and made findings on all the relevant statutory mitigating factors before imposing his sentence.[3] *See State v. Cid*, 181 Ariz. 496, 501 (App. 1995) ("[A]n appellate court presumes that the trial court considered all relevant mitigating factors in rendering its sentencing decision."). Nothing in the record suggests the court's consideration was lacking. Considering the discretion with which the superior court is vested in considering mitigating circumstances, *see State v. Webb*, 164 Ariz. 348, 355 (App. 1990), we find no abuse of discretion. *See also Cid*, 181 Ariz. at 501.

## CONCLUSION

¶26      We vacate Wallace's conviction for Count 2 and affirm the remaining convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[3]      Wallace complains the superior court did not make an express finding regarding community support. "The trial court is not required to articulate any factual findings as to mitigating factors which it does not find to be true or which will not be relied upon in sentencing a defendant." *See State v. Cid*, 181 Ariz. 496, 501 (App. 1995).